## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00798-SCT

*MARK STEVEN LAHMANN*

*v.*

*GLENDA ANN KELLEY HALLMON*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/97 |
| TRIAL JUDGE: | HON. MELVIN McCLURE |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | SARAH C. JUBB |
| ATTORNEY FOR APPELLEE: | THOMAS S. SHULER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/22/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/12/98 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This is an appeal from a final judgment of the Chancery Court of the First Judicial District of Panola County, Mississippi. On opposing complaints for contempt and for modification of a divorce decree, Appellant Mark Steven Lahmann (hereinafter "Lahmann") was found to be in contempt of court for failure to pay child support and Appellee Glenda Ann Kelley Hallmon (hereinafter "Hallmon") was found not to be in contempt for failure to allow visitation to which the parties had agreed. Both parties' requested modifications were refused.

### Course of Proceedings

¶2. On November 27, 1996, Lahmann filed a Complaint for Contempt and for Modification of Former Decree against Hallmon. A summons for Hallmon was issued that day, and it was executed on November 28 by a private process server whose return was filed on December 3. An Answer to Petition to Modify Former Decree and Counterclaim of Contempt, Modification, Etc. was filed on January 10, 1997. By administrative order, dated December 16, the case was set for trial on January 17, 1997. Thereafter, an Order for Continuance was entered and the case was reset for trial on March 12, 1997, at the courthouse in Sardis, Mississippi.

¶3. A hearing was held before the Honorable Melvin McClure, Jr., Chancery Judge on March 12, 1997. Following a one day trial and after hearing testimony from witnesses and allowing introduction of a number of documents and other exhibits, the trial court delivered its ruling in open court. This ruling found Lahmann to be in willful contempt of court for failure to pay child support as ordered, neither party was granted modification of the original decree, visitation provisions were clarified and Lahmann was ordered to pay Hallmon's attorney's fees in the amount of $1,000.00. An Order of Contempt, Etc. reflecting this ruling was filed April 7, 1997.

¶4. Lahmann's Motion for a New Trial was filed April 16, 1997. Following a hearing May 5, 1997, the trial court overruled the motion from the bench, and an order reflecting that ruling was filed May 19, 1997. Thereafter Lahmann perfected his appeal raising the following issues:

> **I. WHETHER THAT AMOUNT OF THE JUDGMENT AWARDED TO HALLMON IS GREATER THAN PERMISSIBLE?**
>
> **II. WHETHER LAHMANN'S FAILURE TO PAY CHILD SUPPORT WAS SO WILLFUL AND OBSTINATE AS TO MAKE HIM GUILTY OF CONTEMPT OF COURT?**
>
> **III. WHETHER, IN SPITE OF THE DOCTRINE OF UNCLEAN HANDS, LAHMANN PROVED A MATERIAL CHANGE IN CIRCUMSTANCES ENTITLING HIM TO A REDUCTION IN THE AMOUNT OF PERIODIC CHILD SUPPORT DUE FROM THE DATE OF THE HEARING?**
>
> **IV. WHETHER HALLMON WAS IN WILLFUL CONTEMPT OF THE VISITATION PROVISIONS OF THE PRIOR COURT ORDER AND, THUS NOT ENTITLED TO ANY AWARD OF ATTORNEY FEES?**

## STATEMENT OF THE FACTS

¶5. Lahmann and Hallmon were married in Sullivan, Missouri on September 6, 1980. Their union produced two children, Scott Andrew Lahmann and Kelly Lynn Lahmann. After irreconcilable differences arose between them, the couple separated and were divorced on January 26, 1987. The divorce decree provided that Hallmon would have full custody, care and control of the minor children and that Lahmann was to have visitation with his children on every other weekend beginning February 6, 1987. The only restriction on the visitation was that Lahmann was not to remove the children from the State of Mississippi without court approval. The divorce decree also required that Lahmann pay as child support the sum of $150.00 per week commencing January 30, 1987.

¶6. With the exception of $125.00 paid in 1989, Lahmann paid absolutely no child support from at least 1988, a year after the divorce, until 1996 when criminal proceedings were instituted against him in Missouri, his present state of residence, at the urging of Hallmon. Lahmann does not dispute that the child support was not paid. During this period of time, specifically in 1992, 1993, 1994 and 1995, Lahmann spent, according to his tax returns, a net of $17,848.07 on his show horses. He characterized this as a business that took time to show profit. However, it is clear that in 1992, he spent $2,188.00 with zero income. In 1993, he spent $3,334.63 with zero income. In 1994, he spent $7,143.54, although he did report $1,117.22 in income. In 1995, he spent $7,399.71, and he reported

income of $1,189.00. This adds up to $2,307.22 as income for four years while he was in this business and $20,155.29 in expenditures, making for quite an unsuccessful business. It is also important to note that during this time, Lahmann did not pay one dime to support his children and totally ignored the requirements of the Decree of Divorce.

¶7. In December of 1995, criminal proceedings for non-support were instituted in Missouri at Hallmon's urging. At least by January 25, 1996, he was aware that Hallmon was seeking support from him for the parties' two children. It was at this time that Lahmann received a phone call from the Sheriff's Department in Washington County, Missouri, and was told that there was a warrant for his arrest for non-payment of support, and was asked to turn himself in at the Sheriff's office. He did so, was jailed, and posted bond. After hiring an attorney, Lahmann reached a plea agreement with the district in which he pleaded guilty and was ordered to pay $5,000.00 immediately plus $300.00 a month for nine months. On the tenth month, Lahmann was ordered to pay the current support plus fifty percent (50%) of amount in arrearage until the Mississippi support order could be modified. In order to meet the terms of the Missouri sentence, Lahmann had to return to the Chancery Court of the First District of Panola County, Mississippi, to have his current support modified. He stated at the trial that because he was forced to return to court, he should have his visitation rights enforced at the same time.

¶8. In July of 1996, subsequent to the Missouri criminal proceedings, Lahmann moved to Climax Springs, another town in Missouri located in the Lake of the Ozarks area. At the time of the trial, Lahmann and his new wife were living in a trailer and he was working two nights a week singing in night clubs, for which he testified he was earning $75.00 per night. Lahmann testified at trial that he was engaged in no other gainful employment and had no construction jobs. However, Lahmann's new wife testified that in addition to singing he does roofing and other odd jobs for which he is paid resulting in an additional income in an amount unknown, but characterized as "nominal."

¶9. Furthermore, Lahmann and his new wife testified that during the time between the move in 1996 and the trial of this action in March of 1997, Lahmann spent considerable time using his construction skills to help build a house and feed store for a new business venture which promised to be highly successful. His wife testified that Lahmann probably saved $15,000.00 doing this work. The testimony is uncontroverted that all of this is solely in his new wife's name. Their reason for this is that Lahmann had previously filed for bankruptcy and had credit problems.

¶10. When Lahmann was asked if he could earn more by taking a day job, perhaps in construction where he had traditionally worked, Lahmann acknowledged that he could. In fact when asked if he could earn more money by taking a minimum wage job, Lahmann stated that he could. When asked whether instead of pulling his trailer to the Ozarks after his child support conviction he could have pulled it instead to a more prosperous area, obtained a more prosperous job, and therefore had more funds with which to pay his child support, he acknowledged that he could. However, in all these situations and possibilities for complying with the court's decree and supporting his children, there was a serious problem according to Lahmann. He would not be happy.

¶11. It must also be remembered that Lahmann does not allege that Hallmon refused to let him see the children or exercise visitations with them. In fact, Lahmann testified that he had not called or come to see the children as much as he should. Lahmann testified that his real complaints were that

he could not take the children to Missouri and could not visit with the children unless it was around Hallmon's residence. However, it was the court's divorce decree that prevented Lahmann from taking the children to Missouri without court approval.

## DISCUSSION OF THE ISSUES

### Standard of Review

¶12. Under the standard of review of a chancery court's findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not disturb a decision on appeal unless the findings are manifestly in error. *Smith v. Smith*, 585 So.2d 750, 753 (Miss.1991); *Nichols v. Tedder*, 547 So.2d 766, 781 (Miss.1989). If this Court finds that the chancellor's decision was manifestly wrong, or that the court applied an erroneous legal standard, this Court will not hesitate to reverse. *Bowers Window & Door Co. v. Dearman*, 549 So.2d 1309, 1312-13 (Miss.1989)

### I. WHETHER THAT AMOUNT OF THE JUDGMENT AWARDED TO HALLMON IS GREATER THAN PERMISSIBLE?

¶13. Lahmann asserts that the amount of the judgment awarded to Hallmon for back child support is $1,200.00 too high. Specifically, the claim is that the maximum the Chancellor could have awarded was $67,500.00, rather than the $68,950.00 awarded.

¶14. First, the basis of Lahmann's position is not that the amount awarded is incorrect or not owed, but rather that the amount awarded and owed is in excess of the amount claimed by Hallmon at the time of the filing of her counterclaim, several months prior to trial. The difference is the additional unpaid support coming due during the pleadings stage. Lahmann cites as authority *Seymore v. Greater Mississippi Life Ins. Co.*, 362 So.2d 611 (Miss. 1978) and *Duncan v. Duncan*, 417 So.2d 908 (Miss. 1982). This Court stated in *Duncan*:

> Appellee is bound by her pleadings. The chancellor had no authority to award appellee a greater amount than that prayed for in her petition. Had appellee desired a judgment for the amount of child support in arrearage which had occurred between the filing of her petition for contempt and the entry of the final judgment, an amendment to her petition would have sufficed. However, this was not done and the chancellor was therefore confined to the amount alleged in her petition.

*Duncan v. Duncan*, 417 So. 2d 908, 910 (Miss. 1982). Thus, the basis of this assertion is that Hallmon failed to file an amended counterclaim prior to trial.

¶15. However, what Lahmann fails to realize is that both of these cases were tried under the rules of practice and procedure in effect prior to the adoption of the Mississippi Rules of Civil Procedure which govern all actions filed after January 1, 1982. Rule 15(b) of the Mississippi Rules of Civil Procedure provides in part:

> When issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon the motion of any party at any time, even after judgment; but

failure so to amend does not affect the result of the trial of these issues.

In elaborating on the meaning of this section, the Official Comment says:

> Under MRCP 15(b), when evidence is introduced or an issue is raised with the express or implied consent of the other party, the pleadings shall be treated in all respects as if they had been amended to conform to such evidence.

¶16. In the case of *Queen v. Queen*, 551 So. 2d 197 (Miss. 1989), the Court in explaining Rule 15(b) adopted a very liberal view of the amendment of the pleadings to conform to the evidence, stating that if evidence is offered by a party which is outside the scope of the pleadings and the other party fails to object, the opponent will be considered to have impliedly consented to the issue and the pleading will be amended accordingly, including the ad damnum. *Queen v. Queen*, 551 So. 2d 197, 202 (Miss. 1989). See also *Weiss v. Weiss*, 579 So.2d 539 (Miss. 1991).

¶17. In the instant case Lahmann offered no objection to evidence offered by Hallmon of a deficiency of child support greater than the amount set forth in her pleading. That the pleadings should therefore be deemed amended accordingly is particularly applicable in a case such as this in that the amount of judgment sought is a liquidated as opposed to an unliquidated amount which Lahmann could reasonably calculate based on his own knowledge of the requirements of the decree versus the amounts paid by him. Furthermore, Lahmann knew that since he was not currently paying the full amount of child support due, the outstanding amount thereof would continue to increase until trial.

¶18. The failure to formally amend to conform with the evidence "does not affect the result of the trial of these issues." M.R.C.P. 15(b). The judgment rendered in favor of Hallmon granted to her the relief to which she was entitled by the proof and was within the jurisdiction of the court to grant. M.R.C.P. 54(c). Furthermore, it did not exceed the amount demanded in the pleadings as amended. *Queen*, 551 So. 2d at 202. Therefore, this assignment of error is without merit.

### II. WHETHER LAHMANN'S FAILURE TO PAY CHILD SUPPORT WAS SO WILLFUL AND OBSTINATE AS TO MAKE HIM GUILTY OF CONTEMPT OF COURT?

¶19. The purpose of civil contempt is to enforce or coerce obedience to the orders of the court. *Jones v. Hargrove*, 516 So. 2d 1354, 1357 (Miss.1987). See also, *Hinds County Bd. of Supervisors v. Common Cause of Mississippi*, 551 So. 2d 107, 120-21 (Miss.1989); *Smith v. Smith*, 545 So. 2d 725, 727 (Miss. 1989). Expressed another way, a decree finding a person in civil contempt resembles an injunction and seeks to force a party to act or cease to act in a particular manner. *Smith*, 545 So. 2d at 727. In a contempt action involving unpaid child support, when the party entitled to receive support introduces evidence that the party required to pay the support has failed so to do, a prima facie case of contempt has been made. *Guthrie v. Guthrie*, 537 So. 2d 886, 888 (Miss. 1989). At this point, the burden shifts to the paying party to show an inability to pay or other defense, and this proof must be clear and convincing and rise above a state of doubtfulness. *Duncan*, 417 So.2d at 909-10; *Lewis v. Lewis*, 213 Miss. 434, 57 So. 2d 163 (1952); *Shelton v. Shelton*, 653 So. 2d 283, 286-87 (Miss. 1995). Whether a party is in contempt is left to the Chancellor's substantial discretion. *Shelton*, 653 So. 2d at 286. In reviewing a case on appeal, with respect to issues of fact where the Chancellor made no specific finding of fact, the assumption is that the Chancellor resolved all fact

issues in favor of the appellee or at least in a manner consistent with the decree. *Smith v. Smith*, 545 So. 2d at 727.

¶20. It is obvious from the record that a prima facie case of contempt was made by Hallmon. Lahmann concedes that he failed to pay his child support. In fact, he concedes that he went eight years paying only $125.00 on his child support, and he started paying a portion thereof ($300.00 per month as opposed to $150.00 per week as required by the divorce decree) only after criminal charges for non-support were instituted against him in Missouri. Consequently, the question before this Court is whether Lahmann met his burden of proof to show that he was not in contempt of court. The Chancellor was obviously of the opinion that he did not and so found as evidenced by his ruling. Under the established scope of review, the Chancellor's findings will be disturbed only if they are manifestly erroneous or due to the application of an erroneous legal standard. *Smith v. Smith*, 607 So. 2d 122, 126 (Miss. 1992). Therefore, this Court must look at the evidence that supports the Chancellor's finding.

¶21. Lahmann argues that he is in poverty and cannot comply with the terms of the court's prior decree. It is true that Lahmann cannot at this time pay the entire arrearage of $68,950.00 that has accrued since 1987. However, Lahmann should have promptly filed for modification of the decree when he realized he would be unable to pay the court ordered child support. *Shelton*, 653 So. 2d at 286-87. Lahmann made no such effort. He only took action after he was convicted of felony non-support in Missouri and placed under probationary terms that required him to pay or go to jail. Even at this point in time, Lahmann failed and refused to abide by and pay what was ordered in his divorce decree and waited six months to seek its modification. Moreover, the Chancellor, in holding Lahmann in contempt, did not commit him to jail or require him in order to purge himself to pay all sums of back child support immediately. Under the decree, the Chancellor directed Lahmann to purge himself of his contempt by paying an amount equal to ten percent (10%) of his current child support payment (amounting to $15.00 per week) along with his ongoing support obligation. It is difficult to understand how a man who has gone so long paying so little can reasonably object to an order requiring him to pay such a nominal amount to rectify his past disregard of a decree of a Chancery Court of this State.

¶22. Additionally, during this time when Lahmann refused to pay his child support, he spent large sums taking care of his horses and going to horse shows. This fact, along with other substantial evidence, proves that Lahmann could have made some payments towards his child support obligation. The Chancellor applied the correct legal standard and found that Lahmann failed to meet his burden of proof. This Court will not reverse a chancellor's finding where it is supported by substantial evidence. *Morreale v. Morreale,* 646 So. 2d 1264, 1266 (Miss. 1994). Therefore, the Chancellor's action holding Lahmann in contempt should be upheld. *Shelton*, 653 So.2d at 286-87.

¶23. Finally, Lahmann attempts to excuse his willful contempt by citing the clean hands doctrine. Lahmann argues that Hallmon's violation of the visitation provisions in the divorce decree amounts to "unclean hands" and thus, is a defense to her prima facie case of contempt. In addressing this doctrine, this Court has said:

> Courts apply the maxim requiring "clean hands" only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of

the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.

*Pierce v. Heritage Properties, Inc.*, 688 So.2d 1385, 1391 (Miss. 1997) (*quoting Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)).

¶24. Lahmann cites the cases of *Cole v. Hood*, 371 So. 2d 861 (Miss. 1979), and *Cunliffe v. Swartzfager*, 437 So. 2d 43 (Miss. 1983) in support of this proposition. However, both of these cases are distinguishable from the case sub judice. In *Cole*, the children of the parties were hidden from the husband for a period of eight years. In *Cunliffe*, each party grabbed a child and kept the child secreted from the other party for a period of five years, with the father unable to communicate with his son except through relatives. In the present case, Lahmann was never denied visitations with his children, and he did not claim that he was so denied. Pictures introduced into evidence by Lahmann during the trial showed visitations at various times. Lahmann knew where the children were at all times and admitted that he did not contact them as much as he should. In fact his two complaints were that he could not take the children to his home in Missouri, and that Hallmon placed restrictions on the manner of exercising those visitations. The first complaint is actually against the court decree which required court approval for Lahmann to take the children from the state, a provision which may or may not be against public policy. However, Lahmann never sought to challenge this provision and never made a request to the court to take his children from Mississippi.

¶25. The second complaint involves controversy and differences regarding the manner of visitations, but not any denial of visitation rights. The Chancellor determined that Hallmon's actions of requiring the visits to be at or close by her home were not done in contempt of the court order, and any undue complications placed on Lahmann's visitations did not excuse his actions of non-payment of child support, especially where ample means were provided in the Chancery Court to remedy any controversy or difficulties he may have had. *Westmoreland v. Jackson*, 401 So. 2d 725, 726 (Miss. 1981).

¶26. It is clear from the record that there was ample testimony and evidence to support the Chancellor's finding that Lahmann was in contempt of court. Therefore, this assignment of error is without merit.

> **III. WHETHER, IN SPITE OF THE DOCTRINE OF UNCLEAN HANDS, LAHMANN PROVED A MATERIAL CHANGE IN CIRCUMSTANCES ENTITLING HIM TO A REDUCTION IN THE AMOUNT OF PERIODIC CHILD SUPPORT DUE FROM THE DATE OF THE HEARING?**

¶27. Lahmann next argues that the Chancellor erred in ruling that there was no substantial evidence to support a material change in circumstances entitling Lahmann to a reduction in the amount of child support. Support agreements for divorces granted on the ground of irreconcilable differences are subject to modification. *Thurman v. Thurman*, 559 So. 2d 1014, 1017 (Miss. 1990). The modification can occur only if there has been a material change in the circumstances of one or more of the parties. *Thurman*, 559 So. 2d at 1017. The change must occur as a result of after-arising circumstances of the parties not reasonably anticipated at the time of the agreement. *Tingle v.*

*Tingle*, 573 So. 2d 1389, 1391 (Miss. 1990). A chancellor is afforded broad discretion in the area of modification of child support and this Court will reverse only when the chancellor was manifestly in error in a finding of fact or if there has been an abuse of discretion or when an erroneous legal standard was applied. *McEwen v. McEwen*, 631 So. 2d 821, 823 (Miss.1994); *Tilley v. Tilley*, 610 So.2d 348, 351 (Miss.1992); *Hammett v. Woods*, 602 So.2d 825, 828 (Miss.1992).

¶28. Lahmann's argument that his child support obligation should be reduced because he is not financially capable of paying is without legal foundation. In the case sub judice, the chancellor properly found that there had been no material change in circumstances. Lahmann's income apparently decreased between the time of his divorce and the hearing. However, that decrease was directly related to his decision to start a horse business and to later voluntarily move to the Ozarks and to work only two days a week singing in clubs. Lahmann even testified that although he had to close his existing construction business in Washington County, Missouri, instead of moving to Climax Springs to sing, he could have moved to a larger city and obtained a job in the construction industry making considerably more money. Furthermore, Lahmann testified that he could take any minimum wage job and make more money.

¶29. "'The law is well-settled that, if an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support.'" *Parker v. Parker*, 645 So. 2d 1327, 1331 (Miss. 1994) (*quoting* *Willis v. Willis*, 820 P.2d 858 (Or.Ct.App. 1991)). "'Bad faith' has generally been defined as an obligor's action to reduce income or assets for the purpose of 'jeopardizing the interests of his children.'" *Parker*, 645 So. 2d at 1331 (*quoting Nelson v. Nelson*, 357 P.2d 536 (Or. 1960)). The chancellor stated in his ruling:

> As to the father's request to modify the former decree to reduce his child support, the only change I saw was his voluntary reduction of his income.
>
> The numbers nowhere added up and made no sense at all to me. It seems to me that based on the testimony of his wife that he is singing making $75.00 a night singing, that's what he used to come up with the $600.00.
>
> Even his present wife testified that he does other odd jobs in addition to that, so obviously he has some income that was not reported on his financial declaration.
>
> I think as to the testimony of his tax returns as to what he was making in '92 through '95, it is obvious to the Court that he was receiving at least some money for roofing jobs in cash that he wasn't reporting.
>
> But the most important thing that I see in this regard is the fact that singing is not enough. He has to get a real job. It might be making him happy to sing two nights a week at $75.00 a night, but when he has children that aren't receiving child support, and he has a $68,000.00 arrearage, he has to get out and get a real job. He has not proven that he has an inability to pay and he is not entitled to any modification at all.

The chancellor observed the witnesses firsthand, observed their demeanor, and heard the testimony. The chancellor obviously believed that Lahmann's lifestyle was a deliberate and voluntary action to have no income or assets in order to reduce his child support and thereby escape having to pay the

sums that would otherwise be required in order to abide by the probation requirements of his Missouri criminal conviction. The record contains abundant evidence to support the chancellor's findings. Therefore, this assignment of error is without merit.

¶30. Lahmann also argues that unless his child support is reduced he will be put in jail in Missouri because of the probation order in his criminal proceeding in Missouri. He contends that this would not be in the best interest of the children.

¶31. It is important to note that Lahmann's sentencing order allowed him nine months from the date of his plea to find a job and prepare to pay the price of his felonious actions, but he did not do so. In fact, from May, 1996 until the time of this appeal, it has been some twenty months since Lahmann was sentenced which is plenty of time for him to find adequate work which would allow him to meet his obligations. Furthermore, this Court has stated that subjecting on obligor to the threat of incarceration is acceptable as motivation to pay child support. ***Varner v. Varner***, 666 So. 2d 493, 496 (Miss. 1995). However, reference to such matter is really not necessary. The events involved in the Missouri proceeding are in no way controlled by or subject to the courts of Mississippi. What the Missouri court might do to Lahmann in the future is speculative and is in no way a part of the case sub judice. Therefore, this assignment of error is found to be without merit.

### IV. WHETHER HALLMON WAS IN WILLFUL CONTEMPT OF THE VISITATION PROVISIONS OF THE PRIOR COURT ORDER AND, THUS NOT ENTITLED TO ANY AWARD OF ATTORNEY FEES?

¶32. Finally, Lahmann asserts that the chancellor erred in awarding Hallmon the attorney fees she sought because she was, in fact, in willful contempt of the visitation provision of the prior court order. The standard for an award of attorney fees on a modification motion is much the same as in the original action. ***Setser v. Piazza***, 644 So. 2d 1211, 1216 (Miss. 1994); ***Cumberland v. Cumberland***, 564 So. 2d 839, 844-45 (Miss. 1990). "Attorney fees are not awarded in child support modification cases unless the party requesting fees is financially unable to pay them." ***Sester***, 644 So. 2d at 1216.

¶33. This case also involved contempt proceedings. Lahmann did petition the trial court for contempt because he believed that Hallmon violated the provisions of the prior court order concerning visitation. However, the chancellor held that Lahmann failed to establish a prima facie case of contempt on the part of Hallmon and denied his petition. Whether a party is in contempt is left to the Chancellor's substantial discretion. ***Shelton***, 653 So. 2d at 286. In reviewing a case on appeal, with respect to issues of fact where the Chancellor made no specific finding of fact, the assumption is that the Chancellor resolved all fact issues in favor of the appellee or at least in a manner consistent with the decree. ***Smith v. Smith***, 545 So. 2d at 727. Thus, this Court should defer to the chancellor's determination that Hallmon was not in contempt .

¶34. When the court denies a spouse's petition for contempt, no award of attorneys fees is warranted. ***Cumberland***, 564 So. 2d at 845. Since Hallmon was successful on her motion for contempt, it follows she is eligible for an award of attorney fees. When considering an award of attorney fees, the lower court must take into account a sum sufficient to secure a competent attorney; the relative ability of the parties; the skill and standing of the attorney employed; the nature of the case and novelty and difficulty of the questions at issue; the degree of responsibility involved in the

management of the case; the time and labor required; the usual and customary charge in the community; and preclusion of other employment by the attorney due to the acceptance of the case. *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). An itemized account of Hallmon's attorney fees was introduced into evidence. She requested $1,330.00 and was awarded $1,000.00. Although the record does not reflect that the chancellor specifically applied the *McKee* factors to this case, the award appears reasonable. Finding no manifest error, this Court affirms the award of attorney fees.

## CONCLUSION

¶35. This Court finds that the chancellor did not err: (1) in his award to Hallmon, (2) in finding Lahmann in contempt, and (3) in denying Lahmann's request for modification of child support. Thus, the decision of the chancellor should be affirmed. Furthermore, because Hallmon was successful in her action for contempt, the result of her former husband's continuing failure to meet his support obligations, this Court affirms the chancellor's award of attorney fees.

¶36. **JUDGMENT IS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR.**