KING, P.J.,
for the Court:
¶ 1. On July 28, 1998, the Chancery Court of Jackson County ruled that James Gautreaux had paid child support obligations in full and dismissed a contempt action brought by the Mississippi Department of Human Services [DHS] on behalf of Margaret Gaiitreaux. DHS appeals asserting two issues:
1. Whether the Chancery Court erred in failing to rule that the Plaintiff had made out a prima facie case of contempt against the defendant?
2. Whether the Chancery Court erred in ruling that the Defendant had met his burden of proof, and that he had purged himself of contempt, despite the fact that he offered no proof of *859 payment, inability to pay, or substantial compliance with the terms of the divorce decree?
PROCEEDINGS BELOW
¶ 2. James and Margaret Gautreaux were divorced on August 8, 1978. On December 28, 1995, DHS filed a petition for contempt arising from James’s failure to pay child support for the couple’s only child, James Willis Gautreaux. It is uncontested that this child was emancipated on October 3,1993.
¶ 3. On April 3, 1996 a hearing was held before a master. No transcript of that hearing has been provided to this Court. However, Gautreaux and DHS agree that the trial court in a judgment entered on May 6, 1996 adopted the master’s finding which found that Gautreaux, according to DHS records, owed support of $21,069.51, through February 1, 1996, that this amount included an assessment of $6,282.85 for 29 months’ support after the child was emancipated. The trial court further found that DHS documents indicating the amount of arrearage conflicted with one another. The trial court relied upon the DHS document reciting the $21,069.51 figure, then deducted the amount of support it found was assessed after emancipation and entered judgment for $14,786.66. The trial court set a May 15, 1996 hearing date for Gautreaux to show why he should not be incarcerated until that amount was paid. DHS’s counsel signed this order “approved as to content.”
¶ 4. On that same day, May 6, 1996, DHS filed a motion to set aside or amend the master’s report contending that the master erred in relying upon the DHS document which stated the arrearage was $21,069.51, when the affidavit accompanying the petition for contempt asserted the figure was $28,795.00, and Margaret testified that this was the correct figure.
¶ 5. Seven days later, on May 15, 1996, in total contradiction of its motion to set aside or amend the master’s report, DHS advised the trial court it had settled the claim for $14,786.66, the same amount recited in the original judgment. On June 12, 1996, counsel for DHS approved a judgment which formalized the settlement agreement by reciting the $14,786.66 figure and stated that James Gautreaux tendered a check for $10,000 DHS garnished an income tax refund of approximately $1,500 and James Gautreaux agreed to pay the balance of $3,286.66 in monthly installments of $200.
¶ 6. On September 12, 1996, the trial court entered an order overruling DHS’s motion to set aside or amend the judgment. James Gautreaux’s counsel prepared the order to be a final denial of the motion to set aside or amend the judgement and presented a copy of the order to DHS’s counsel. However, after reviewing the proposed order DHS’s counsel wrote in “this cause is hereby remanded for a hearing before the chancellor” and signed the order approved “as to form.”
¶ 7. On March 7, 1997 the trial court heard oral arguments on the motion to set aside or amend the judgment. The record does not contain a transcript of this hearing, but James Gautreaux contends the only document admitted into evidence going to the amount of back child support owed was the DHS document reciting $21,069.51. Although not reflected in the record, apparently the trial court ordered both parties to submit proposed orders. James Gautreaux’s counsel did not submit an order, but the DHS attorney did, and that order stated that the arrearage was $15,684. This order contained no findings-of fact to indicate how this $15,684 was calculated, but it appeared that DHS started with the figure $28,795 as that which was owed and then deducted whatever amount was believed to have been paid to arrive at $15,684 as still being owed. DHS’s counsel admits she failed to provide a copy of the proposed order to James Gautreaux’s counsel as required by Uni *860 form Chancery Court Rule 5.04.[1] DHS’s counsel states her reason for failing to provide a copy of the order to counsel opposite was “[o]therwise, the Court would be presented with conflicting orders signed by the attorneys of record.”
¶ 8. Gautreaux filed a motion for a new trial on April 23, 1997. The basis for the motion was both that he had no notice of DHS’s proposed order and that the evidence did not support a finding of a $15,684 arrearage.
¶ 9. The trial court granted the motion for a new trial and held a hearing on June 18, 1998. Both James and Margaret Gau-treaux testified, and gave conflicting accounts of how much was owed and how much was paid. Neither James Gautreaux nor Margaret Gautreaux supported their testimony with records.
¶ 10. DHS called Nancy McBeath of its bookkeeping department to testify as to DHS’s records of James’s payments, and this testimony further clouded the issue. McBeath admitted that one DHS document set James Gautreaux’s arrearage at $28,695 as of April, 1996 while a different DHS document set the amount at $20,852.86 as of the same date. She admitted that she could not determine whether James Gautreaux hád been credited with all payments 'made directly to Margaret. The DHS documents showed that DHS continued.to assess child support amounts to the arrearage long after the couple’s only child was emancipated. McBeath could not determine whether DHS ever credited James Gautreaux with the $6,282.85 which the trial court previously decreed had been erroneously assessed for support arising after the child’s emancipation.
¶ 11. On July 28, 1998, the trial court issued its judgment stating in part:
“[t]he Court finds that the arrearage as set forth by the Department of Human Services is extremely confusing in that the ¿mount of the arrearage varies from document to document, depending upon the office of the Department of Human services generating that particular document. To add to the confusion, some of the receipts and records of payment have been destroyed and therefore cannot be produced. Therefore, based on the conflicting documents which have been introduced in the cause and based upon the best evidence the Court has before it, including the previous evidence, testimony, and master’s report, entered in this cause, the Court finds that all child support obligations have been paid in full.”
ANAYLSIS
1. Whether the Chancery Court erred in failing to rule that the Plaintiff had made out a prima facie case of contempt against the defendant?
¶ 12. DHS contends that the trial court should have ordered James to pay more than it ultimately did. In this action there were three judgments which could have ended this litigation. The first was the judgment entered on June 12, 1996. Prior to the entry of that judgment DHS consented to the findings of fact which formed the basis of that judgment and set the arrearage at $14,786.66. Subsequently DHS announced to the trial court it had settled the case.[2] The second was entered *861 on Mar 17, 1997. DHS submitted the proposed order inconsistently with Uniform Chancery Court Rules, and the trial court granted James Gautreaux’s motion for a new trial. The third was the judgment of July 28, 1998 which followed the hearing of June 18,1988.
¶ 13. There is evidence in the record that could support finding the amount of arrearage at any of several amounts. DHS’s argument is simply that unless the trial court accepted its version of the ar-rearage, the trial court abused its discretion. In the first order the trial court relied upon DHS’s assertion of what the arrearage was and set the amount at $14,786.66 after crediting James with $6,282.55 which DHS agreed was incorrectly assessed after the couple’s only child was emancipated. In the second order it appears that the trial court based its calculation of $28,795 upon the affidavit supporting the petition for contempt as well as Margaret Gautreaux’s testimony and previous sworn statements. In the third judgment, the trial court did not make a specific finding of what amount of back support was owed. The rule of appellate analysis is that where no specific findings are made the appellate court assumes the trial court resolved factual issues consistent with the judgement or decree. Bruce v. Bruce, 687 So.2d 1199, 1203 (Miss.1996); Morris v. Stacy, 641 So.2d 1194, 1196-97 (Miss.1994); Bedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983). As is more fully discussed in the second issue there was evidence showing that James Gau-treaux paid $15,341. If we assume that the trial court relied upon the $14,786.66 figure, as it had done in a prior judgment, the trial court’s conclusion that Gautreaux had paid all the support owed is consistent with the facts. Consequently, the question posed by this first issue is whether the trial court erred in finding that the amount owed was $14,786.66.
¶ 14. In a contempt action when the party entitled to receive support introduces evidence that the party required to pay support has failed to do so a prima facie case of contempt has been made, and the burden shifts to the non-paying party to show an inability to pay or some other defense. Lahmann v. Hallmon, 722 So.2d 614, 620 (Miss.1998); Guthrie v. Guthrie, 537 So.2d 886, 888 (Miss.1989). In this case, James Gautreaux freely admitted the failure to pay child support, but defended upon the issue of how much was owed. Our supreme court has found that a trial court abused its discretion by failing to order a party to pay an amount that “only required a mathematical calculation.” Guthrie v. Guthrie, 537 So.2d 886, 888 (Miss.1989). In this case, however, many mathematical calculations are possible which arrive at several different amounts. The determination of .whether a party is in contempt is addressed to the trial court’s discretion. Lahmann v. Hallmon, 722 So.2d at 620 (Miss.1998). The trial court is not obligated to accept either party’s assertion as to how much child support was paid or was not paid. This is particularly true where the party claiming support offers calculations which conflict. Findings of fact are not disturbed if substantial evidence supports them. Premeaux v. Smith, 569 So.2d 681, 683-684 (Miss.1990); Wing v. Wing, 549 So.2d 944, 947 (Miss.1989); Carr v. Carr, 480 So.2d 1120, 1124 (Miss.1985). In this case, DHS’s own statement given to James Gau-treaux before this litigation commenced supports the trial court’s judgment. While the trial court did not rule that DHS was bound by its previous consent to this amount, it would not have been unreasonable for the trial court to take DHS’s actions into account when weighing the *862 probative value of the various documents and testimony. Credible evidence supports a finding that the amount of arrear-age was $14,786.66. Accordingly, this issue is without merit.
2. Whether the Chancery Court erred in ruling that the Defendant had met his burden of proof, and that he had purged himself of contempt, despite the fact that he offered no proof of payment, inability to pay, or substantial compliance with the terms of the divorce decree?
¶ 15. DHS argues that James failed to produce “a scintilla of evidence that his child support obligation was paid.” Clearly the record does not support this argument. It is not controverted that he paid at least $11',360, as DHS acknowledged receipt of a $10,000 check and a $1360 tax refund garnishment. Additionally, in a previous pleading, DHS valued the tax refund it garnished at $1,500.
¶ 16. James Gautreaux contended that since he was found to be in contempt he had paid $15,341: a $10,000 check, an $114i garnished tax refund, and $4200 in court ordered earnings withholdings 'collected pursuant to the June 12, 1996 judgment. He testified that DHS had assessed $6,282.85 in child support after his son was emancipated. DHS’s records indicated that after the June 12, 1996 judgment it received monthly payments between $4,000 and $4,800 in addition to the lump sum payments of the check and tax refund. DHS’s records indicated a claim for child support after the couple’s only child was emancipated in October of 1993. Previously DHS stated to the court that it had improperly assessed the $6,282.85 in support after October of 1993 and consented to entry of judgment to that effect.
¶ 17. The decision as to whether a party has purged himself of contempt is within the trial court’s discretion. Lahmann v. Hallmon, 722 So.2d at 620 (Miss.1998). As noted previously, the trial court did not abuse its discretion in finding the arrearage was $14,786.66 rather than $28,795 as DHS contended. The record contains credible evidence showing DHS valued the arrearage at $21,069.51, of which $6,282.85 was improperly assessed after October of 1993. Deducting this improper assessment would have reduced the amount owed to $14,786.66. There is credible evidence to find James Gautreaux paid at least $15,341.00 after the initial petition for contempt was filed. Under these facts, we cannot find that the trial court’s holding that James Gautreaux had “paid in full” his support obligations was against the overwhelming weight of the evidence. Accordingly, we find there is no merit to this issue. Finding no error, we affirm.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.

. Uniform Chancery Court Rule 5.04 provides that "the attorney who shall be directed to draw the Judgment shall submit the same to opposing ■ counsel for criticism as to form only.”

. DHS argues that its action in consenting to a judgment should not deprive Margaret Gau-treaux of her remedy. In Williams v. Rembert, 654 So.2d 26, 29 (Miss.1995), our Supreme Court did find that even though a parly’s attorney agreed to an order establishing the amount of unpaid support, that order could be corrected through a MRCP 60(b)(2) motion based upon mistake. However, in this case DHS never filed a MRCP 60 motion but instead presented the issue pf reviewing the judgment to the trial court upon its motion to set aside or amend thé master’s report. More fundamentally, the trial court's action in granting the March 7, 1997 and June 18, *861 1998 hearings allowed DHS to re-litigate the issue of what amount was unpaid. In short, the trial court allowed DHS a second, and even a third, bite at the apple. By doing so, the trial court granted DHS all the relief or protection a MRCP 60 motion would have brought it.