## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-00683-SCT

*KENNETH E. SMITH*

*v.*

*SANDRA K. SMITH*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/25/2008 |
| TRIAL JUDGE: | HON. DAN H. FAIRLY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JULIE ANN EPPS |
| | E. MICHAEL MARKS |
| ATTORNEY FOR APPELLEE: | SANDRA K. SMITH (PRO SE) |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED -10/29/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Kenneth E. Smith (Kenneth) and Sandra K. Smith (Sandra) were granted a divorce on June 14, 1989, in Rankin County.  Consistent with the final divorce decree, Sandra was ordered to pay $125 per month in child support to Kenneth.  Kenneth filed a petition for contempt on December 19, 2007, in which he alleged that Sandra owed $24,000 in past-due child support.  This case was then referred to a family master subject to the final approval of the chancellor.

¶2.     Sandra conceded at trial that she was in contempt but claimed a credit against the $24,000 arrearage.  The family master found that Sandra was entitled to a credit of $14,000

for sums Sandra allegedly had withheld from her paycheck and for time the child allegedly had lived with Sandra. Based on the credits allowed by the family master, Sandra was found to be in civil contempt of court and to owe a balance of $10,000 in child-support arrearage. In addition, he awarded attorney's fees and court costs to Kenneth. These findings were accepted by the chancellor, becoming a judgment of the trial court. Kenneth timely appeals, arguing that the judgment amount was improperly reduced by the trial court.[1]

**FACTS**

¶3.     Kenneth and Sandra (now Sandra Spurlock) were granted a divorce in Rankin County on June 14, 1989. One child was born to this marriage, Nicki Charm Smith (Nicki), on February 17, 1988, with custody granted to Kenneth upon divorce. Consistent with the final divorce decree, the trial court ordered Sandra to pay $125 per month as child support to Kenneth, in addition to the child's medical, dental, and hospital expenses, with the first child-support payment to begin July 1, 1989.

¶4.     Kenneth filed an action for contempt in December 2007 for past-due child support in the sum of $24,000.[2] At trial, Sandra sought credit against the $24,000 alleged past-due child-support amount, claiming she had paid $35 per week from March 1991 until November 1994 for child support that was withheld by her employer while she was employed at Ram-

---

[1]   Heretofore, the findings of the family master that have been approved by the chancellor and thus become a judgment of the trial court will be referred to as the findings of the trial court for purposes of clarity.

[2]   The $24,000 total was gathered from a personal spreadsheet titled "Nicki's Child Support Payments" that Kenneth had maintained since the divorce decree in 1989 until Nicki's eighteenth birthday in February 2006. Kenneth did not seek child support beyond February 2006, because Nicki no longer lived with either parent or depended on their support.

2

Fab, Inc., (Ram-Fab) in Crossett, Arkansas.[3] Sandra also sought credit for the time period between March 2002 and April 2004 when Sandra claimed Nicki lived with Sandra and not Kenneth.

¶5.     Sandra produced only testimonial evidence of the withholding from her wages during employment in Arkansas.  Sandra explained that her lack of documentation was because Ram-Fab had undergone many personnel changes, and while Ram-Fab had searched for the documents, Sandra had been told the records were lost and/or destroyed.  In response to Sandra's testimony, Kenneth denied receiving any of the $35-per-week payments.  No documentation or records were provided to confirm or deny these payments by either side.

¶6.     Sandra likewise provided only testimonial evidence that Nicki had lived with her from March 2002 until April 2004, stating that she had fed Nicki, that Nicki had slept in Sandra's house, that Sandra had supported Nicki, and that Sandra had taken Nicki to school every day.  No documentation or records were provided to confirm or deny this testimony at trial, except for a Department of Human Services Affidavit of Accounting in which Kenneth stated that Nicki no longer lived with him after her eighteenth birthday.[4]

¶7.     Testimony provided by Nicki corroborated that she had spent time in her mother's care "off and on," but Nicki disputed her actual residence at the time.  Kenneth disputed that Nicki had lived with Sandra, but stated that Nicki had divided time among Kenneth's home,

---

[3] No court order for withholding was entered by the court.  This is asserted as  an out-of-court, voluntary action by Sandra.

[4] This issue becomes further convoluted in the affidavit in which Kenneth's mother stated that Nicki lived with her as of February 26, 2006, and did not mention Nicki living with either parent.  No further information about that statement was provided.

Kenneth's mother's home, and Sandra's home at the child's will, but she had lived with Kenneth.

¶8.   The trial court noted that the testimony of the parties was extremely unclear. The trial court stated that "testimony from both sides has been very confusing, very sporadic about payments received, about payments that were supposedly made – supposedly credited." The trial court also stated that there was confusion as to where the child lived, who she lived with, and who was responsible for the child's support at various periods of time. Finally, the trial court established that "if the child was living with the mother then she should be entitled to credits."

¶9.   In issuance of the final decree, the trial court credited Sandra $14,000 against the child-support judgment for the payments made "while [Sandra] was working in Arkansas that were withheld from her paycheck and for the periods of time that the child lived with [Sandra] and that [Sandra] was responsible for the child's support."[5] Thus, the trial court found the child-support arrearage to be $10,000.

¶10.   The trial court ordered that Sandra pay $200 per month until the judgment is paid in full, including the legal interest rate of eight percent. The trial court also ordered Sandra to pay $750 in attorney's fees, $107 in court costs, and a $35 process fee within sixty days of the hearing. This judgment was approved in totality by the chancellor on March 25, 2008.

**LEGAL ANALYSIS**

---

[5] The trial court does not state how the $14,000 total was calculated. However, trial testimony showed that Sandra, on her own behalf, requested and affirmed that she was seeking $11,000 in credits against her $24,000 arrearage.

4

¶11. The parties did not disagree that Sandra was, in fact, in contempt for failure to pay child support. Kenneth appeals only the credit applied to the child support owed and the determination of the amount of credit.

¶12. Domestic-relations matters are reviewed under the limited substantial-evidence/manifest-error rule. *Evans v. Evans*, 994 So. 2d 765, 768 (Miss. 2008) (citing *Giannaris v. Giannaris*, 960 So. 2d 462, 467 (Miss. 2007)). This means a chancellor's findings will not be disturbed unless the chancellor was "manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Id*. at 768. This Court will find manifest error only when the verdict "is a result of prejudice, bias, or fraud, or is manifestly against the weight of credible evidence." *Id*. at 773 (quoting *Miss. Dep't of Transp. v. Johnson*, 873 So. 2d 108, 111 (Miss. 2004)). In reviewing a case on appeal, with respect to issues of fact where the court made no specific finding of fact, the assumption is that the court resolved all fact issues in favor of the appellee or at least in a manner consistent with the decree. *Lahmann v. Hallmon*, 722 So. 2d 614, 620 (Miss. 1998) (citing *Smith v. Smith*, 545 So. 2d 725, 727 (Miss. 1989)).

¶13. Courts award child support to the custodial parent for the benefit and protection of the child. *Varner v. Varner*, 588 So. 2d 428, 432 (Miss. 1991) (citing *Lawrence v. Lawrence*, 574 So. 2d 1376, 1381 (Miss. 1991)). Such benefits belong to the child, and the custodial parent has a fiduciary duty to hold them for the use of the child. *Id*. The law remains firm that court-ordered child-support payments vest in the child as they accrue and may not thereafter be modified or forgiven, only paid. *Id*. at 434. But this does not mean that equity may not at times suggest *ex post facto* approval of extra judicial adjustments in the manner

5

and form in which support payments have been made. *Id*. The noncustodial parent may be entitled to credit for any additional support which he/she has evinced by satisfactory proof to the trial court. *Id*. at 435.

## I. THE CONTEMPT

¶14. In a contempt action concerning past-due child support, when the custodial parent introduces evidence that the noncustodial parent who is required to pay the support has failed to do so, a prima facie case of contempt has been made. *Lahmann*, 722 So. 2d at 620. *See also Guthrie v. Guthrie*, 537 So. 2d 886, 888 (Miss. 1989). At this point, the burden falls on the defending party, to avoid a finding of contempt, to prove that there was payment or other defense, and this proof must be "clear and convincing and rise above a state of doubtfulness." *Lahmann*, 722 So. 2d at 620 (citing *Duncan v. Duncan*, 417 So. 2d 908, 909-910 (Miss. 1982)).

¶15. At trial, Sandra conceded a prima facie case for contempt. In fact, Sandra does not appeal the court's finding that she was in civil contempt of court. Despite being less than diligent in her efforts to pay, Sandra, however, disputed two time periods totaling approximately five years that she argues should be credited against her judgment.[6]

¶16. Consequently, because Sandra concedes that she is in civil contempt of court, the question before this Court is whether Sandra met her burden of proof to show that she should be allowed these two credits. The trial court obviously was of the opinion that Sandra had met her burden to receive credits for these two time periods. Therefore, under the established

---

[6] These two time periods are from March 1991 until November 1994 in which Sandra claims a $35 garnishment was withheld from her weekly wage check, and from 2002 to 2004, when Sandra alleges that Nicki lived with Sandra.

6

scope of review, the chancellor's findings will be disturbed only if they are manifestly erroneous or demonstrate the application of an erroneous legal standard. *Lahmann*, 722 So. 2d at 620 (citing *Smith v. Smith*, 607 So. 2d 122, 126 (Miss. 1992)). This Court must look at the evidence provided by the parties that supports the trial court's findings. *Id*.

## II. CREDIT FOR ALLEGED GARNISHMENT

¶17. Sandra alleges that from March 1991 until November 1994, her employer Ram-Fab withheld $35 per week to be paid to Kenneth for child support. Sandra, however, provided no documentation, no tax forms, no letter from her employer, no corroborating witnesses, no written, printed, or copied evidence to prove this allegation. Sandra only testified that she had made three attempts to contact Ram-Fab about documentation, and that Ram-Fab had undergone numerous personnel changes that resulted in the loss or destruction of all documentation that could have supported her claim.

¶18. In *Crow v. Crow,* 622 So. 2d 1226, 1231 (Miss. 1993), the noncustodial parent sought credit for cash, gas, and utilities he claimed he had paid for the benefit of the children. The Court held that "Roy has failed to demonstrate by a preponderance of the evidence he paid support money to the children under circumstances where the support money was used . . . for their benefit." *Id.*

¶19. The facts in *Crow* are similar to those in the matter before the Court today. The father (Roy) claimed credit for (1) cash payments allegedly made directly to his daughters, (2) gasoline charges by his daughters in the amount of $1,560, and (3) payment of the electric bill and water bill in the amounts of $2,059.08 and $255, respectively, for the home where the children and their mother had lived for seventeen months. *Id*. Roy testified he had paid

the children approximately $6,000 in cash for child support, much of which was placed inside a mailbox; he had no record of these payments. *Id.* Roy also testified that water utilized by his sawmill and the water flowing to the marital home were measured by the same meter. Roy could not identify with any certainty the part of the bill generated by his family and the part generated by his business. *Id.*

¶20. Roy also claimed expenses from gas bills, but he could produce only six invoices, reflecting only about $100. *Id.* Roy testified he regularly had paid for gasoline by check, but he failed to produce any cancelled checks. *Id.* Roy said he had paid the electric bill for the former marital home for about seventeen months after he had moved out; his ex-wife testified without contradiction by Roy that these payments were the result of a verbal agreement whereby Roy voluntarily agreed to pay the electric and water bills until he could put the house in her name, and at the time of the trial, this had not been done. *Id.* The Court ruled that Roy had failed to show "by a preponderance of the evidence he paid support money to the children under circumstances where the support money was used to provide shelter, food, clothing, and other necessities for their benefit." *Id.* at 1231.

¶21. It is this Court's opinion that Sandra's testimony alone does not meet the burden of proof required of her to receive a credit for amounts she claimed were withheld from her paycheck. Simply put, the noncustodial parent must present more than uncorroborated verbal testimony to receive credit against an alleged child-support arrearage. Thus, the trial court committed manifest error in granting Sandra credit for the alleged voluntary wage withholding.

8

¶22. Therefore, Sandra should not have been given credit for the alleged $35-per-week garnishment by her Arkansas employer.

### III. CREDIT FOR TIME LIVED WITH NONCUSTODIAL PARENT

¶23. It is clear that one may not be granted credit from a judgment of past-due child support without providing satisfactory proof or evidence. *Varner*, 588 So. 2d at 435. This Court, in *Alexander v. Alexander*, 494 So. 2d 365, 368 (Miss. 1986), dealt with meeting this burden of proof when it applied it to children living in the noncustodial parent's care. The ruling in *Alexander*, which allowed for credit to be given to a noncustodial parent for time the child lived in that home, was expounded upon in *Varner*, where this Court dealt with the unjust enrichment of the custodial party when the noncustodial party had taken custody of one of the children and requested a downward modification of child support. *Varner*, 588 So. 2d at 434.

¶24. In *Varner*, this Court stated that, to allow the custodial parent to be compensated for time that the child had lived with the noncustodial parent, absent visitation and other modifications made by the court, would be to unjustly enrich the custodial parent. *Varner*, 588 So. 2d at 435 (citing *Alexander v. Alexander*, 494 So. 2d 365 (Miss. 1986)). Determining whether the requested credit is equitable and necessary to avoid unjust enrichment of the custodial parent requires that the Court bear in mind the obligation of each parent to provide support for children. *Id*. at 435. "Satisfactory proof" of time spent with the noncustodial parent is deemed to be found by a "preponderance of the evidence" as stated in *Varner*. *Varner*, 588 So. 2d at 435.

¶25. If, in fact, Nicki had resided with Sandra for those two years, and Sandra had offered proof showing she had paid the support directly to or for the benefit of the child, she would have been entitled to a reduction in child support, because it would have, in effect, already have been given or provided for the child, who is the sole beneficiary of the support. *See Varner*, 588 So. 2d at 435. This Court stated in *Alexander*, "when the child moved in with the other parent, and accepted this arrangement for 20 months with child support being paid directly to the child, the parent paying the support is entitled to *full credit* for all support paid to the child." *Alexander,* 494 So. 2d at 368 (emphasis added).

¶26. Sandra provided only testimonial evidence that Nicki had lived with her from March 2002 until April 2004. When Kenneth and Nicki testified, both conceded that Nicki had spent time with Sandra outside the scope of visitation but disputed the claim that Nicki's residence was at Sandra's home. Kenneth stated that Nicki had lived with whichever parent she wished, and sometimes had even stayed with Kenneth's mother. Kenneth also mentioned that he had had trouble with Nicki regarding her schoolwork, and that he would often send Nicki to Sandra's home for help with her homework. This corroborated Sandra's testimony that Nicki had stayed at her home and that Sandra had helped Nicki with her schoolwork and also had taken Nicki to school.

¶27. The testimony and evidence creates a very confusing view of where the child may or may not have lived. The trial court admits the record is confusing; nonetheless, the trial court made a determination as to where Nicki had lived during the debated period. However, the inquiry does not stop there. We must determine whether Sandra met her burden of proof in support of her claim that she made actual payments for the benefit of Nicki and not payments

that she would have made anyway. After a review of the record, we find she did not meet her burden. There may be times where testimony alone is sufficient. However, such was not the case here, as there was a lack of adequate proof. The *Crow* Court held that:

> [T]he rule is that a [non-custodial parent] may receive credit for having paid child support where, in fact, he paid the support directly to or *for the benefit of* the child, where to hold otherwise would unjustly enrich the [custodial parent] [citing *Alexander v. Alexander*, 494 So. 2d 365, 368 (Miss. 1986)]. This principle applies, however, only where the [noncustodial parent] proves by a preponderance of the evidence that he has, in fact, paid the support to the child under circumstances where the support money was used for the child for the purposes contemplated by the support order, that is, to provide shelter, food, clothing and other necessitites for the child.

*Crow*, 622 So. 2d at 1231 (citing *Nichols v. Tedder*, 547 So. 2d 766, 769 (Miss. 1989)) (emphasis added). This Court takes "support" to mean "regular child support" as defined in *Nichols*, 547 So. 2d at 770, and expounded upon in *Crow*, 622 So. 2d at 1230. In those cases, "regular child support" referred to the "sums of money which a parent is ordered to pay for the child's basic, necessary living expenses, namely food, clothing, and shelter." *Crow*, 622 So. 2d at 1230.

¶28. Sandra failed to present satisfactory proof that she spent any money on Nicki as intended by the original support order. We therefore reverse the trial court on this issue.

## CONCLUSION

¶29. We find that the $14,000 credit awarded by the trial court is unsupported by satisfactory evidence. Further, we find that the trial court erred in granting Sandra credit for child support that allegedly was withheld from Sandra's paycheck by her employer from 1991 until 1994, due to a lack of sufficient evidence presented on the record. We also find the trial court erred in awarding Sandra credit for the time period the trial court found Nicki

11

had lived with Sandra, because Sandra did not present any proof that she had made actual payments for the benefit of the minor child that she would not have made without Nicki being present.

¶30. Because the trial court calculated Sandra's child-support arrearage obligation using a $10,000 amount, we remand this matter to the chancellor to reassess Sandra's arrearage obligation consistent with this decision.

¶31. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND KITCHENS, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. CHANDLER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**CHANDLER, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶32. I agree with the majority's decision that Sandra presented insufficient evidence to support the chancellor's finding that she was entitled to a credit against her child-support arrearage for the amounts allegedly garnished from her paycheck. I disagree with the majority's analysis and resolution of the issue of Sandra's entitlement to credit for March 2002 to April 2004, the period in which the chancellor determined that Nicki lived with Sandra. Under the majority's reasoning, assuming the chancellor correctly determined that Nicki lived with Sandra, the chancellor erred by finding that Sandra was entitled to a credit because "Sandra did not present any proof that she had made actual payments for the benefit of [Nicki] that she would not have made without Nicki being present." I write separately because I believe the majority requires excessive proof to support a determination that a

noncustodial parent is entitled to credit for child-support arrearage that accrued during the time the child lived with the noncustodial parent under a de facto change in custody.

¶33.    We previously have held that the standard for a noncustodial parent to receive a credit against a child-support arrearage is proof by a preponderance of the evidence that the noncustodial parent has, in fact, paid the support directly to the child for the basic living expenses of food, clothing, shelter, and other necessities. *Varner v. Varner*, 588 So. 2d 428, 435 (Miss. 1991). "The law remains firm that court-ordered child support payments vest in the child as they accrue and may not thereafter be modified or forgiven, only paid. But this does not mean that equity may not at times suggest ex post facto approval of extra-judicial adjustments in the manner and form in which support payments have been made." *Id.* at 434. Accordingly, a child-support payor "may receive credit for having paid child support where, in fact, he [or she] paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the [non-payor]." *Id.* at 435.

¶34.    The majority finds that Sandra failed to prove that, during the period the chancellor found Nicki lived with her, she had spent money on Nicki as intended by the support order in the amount of $125 per month. Sandra's proof of expenditures on Nicki consisted of her own testimony that Nicki had lived with her for approximately two years, that she had supported Nicki during this period, and that she had fed Nicki and brought her to school every day. Although the majority does not disturb the chancellor's finding that Nicki lived with Sandra, it finds that Sandra's testimony was insufficient to have enabled the chancellor to find by a preponderance of the evidence that she expended $125 per month for Nicki's basic living expenses. The majority would require Sandra to provide evidence as to her

13

specific expenditures for Nicki's basic living expenses, consisting, perhaps, of corroborating testimony, or of documentation such as receipts, canceled checks, or a personal spreadsheet. The majority also places a burden upon Sandra to prove that each expense would not have been incurred "but for" Nicki's presence in her home.

¶35.    When there has been a de facto change of custody from the custodial parent to the noncustodial parent, the new custodial arrangement substantially increases the likelihood that the child-support payor/de facto custodian has made expenditures toward the child's basic living expenses.  Therefore, I believe that a de facto custody change, while not creating a presumption, is additional evidence that supports a finding that a noncustodial parent has made expenditures toward a child's basic living expenses.  Indeed, in *Varner*, the Court did not require documentation or corroborating testimony to affirm the chancellor's finding that the child-support payor was entitled to a credit against the arrearage that accrued when the child was living with the payor.  *Id.* at 435-36.

¶36.    Considering the chancellor's determination that Nicki had lived with Sandra, Sandra's testimony about her expenditures for Nicki during that time, and the relatively small amount of monthly child support Sandra was obligated to provide, I would find that the chancellor was well within his discretion in concluding that Sandra had expended $125 per month for Nicki's food, clothing, shelter, and other necessities during the period that Nicki had lived with her.  I would remand for a determination of Sandra's arrearage with a credit for the amount attributable to the approximate two-year period during which Nicki lived with Sandra.