831 So.2d 1137 (2002)
Edwin Keith FANCHER
v.
Gale Alford PELL f/k/a Gale Alford Fancher.
No. 2001-CA-01513-SCT.
Supreme Court of Mississippi.
December 5, 2002.
*1138 John Hinton Downey, Flowood, attorney for appellant.
Jeffrey P. Hubbard, Susan Louise Durham, Jackson, attorneys for appellee.
EN BANC.
CARLSON, J., for the Court.
¶ 1. This case comes to us via an appeal by Edwin Keith Fancher (Fancher) from a decision of the Chancery Court of the First Judicial District of Hinds County wherein the chancellor split the children's college tuition payments between former spouses, with Fancher paying 70 percent of the costs and Gale Alford Fancher Pell (Pell) paying 30 percent, and additionally, the chancellor entered an award of attorney's fees to Pell. Also, Pell cross-appeals because the chancellor failed to find Fancher in contempt of court for non-payment of a child's college tuition. Finding that the chancellor was correct as to all issues save the issue of the husband's contempt, this cause is affirmed in part, and reversed and remanded in part.

FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. Pell and Fancher were married on December, 20, 1980, in Hinds County, Mississippi. Three children were born into the marriage: Phillip Wendell Fancher (born July 3, 1983), Matthew Ryan Fancher (born June 2, 1986), and Rachel Lauren Fancher (born March 29, 1988). A divorce was granted to Pell and Fancher on March 8, 1991. A provision in the divorce agreement read:
It is agreed by the parties that all three children will be provided with a college education at the appropriate time according to the ability and desires of the child and in keeping with the means and ability of Husband and Wife.
¶ 3. By letter dated May 3, 2000, Pell contacted Fancher about paying for Phillip's college expenses. In that letter Pell explained Phillip's eligibility to take college classes at Holmes Community College while still enrolled in high school under the "dual enrollment program" and indicated her willingness to pay half of the cost under the program. Fancher responded by letter dated May 5, 2000, that he had contacted an attorney in his home state of Washington who advised him to seek counsel in Mississippi. He told her "six days notice is not an adequate length of time to obtain advice on a subject that eventually could involved large amounts of money." Pell responded with a letter dated May 10, 2000, wherein she again mentioned the Holmes Community College dual enrollment program and asked again for "any ideas you have in writing concerning education for the children." Fancher had not yet tendered any money for Phillip's college education.
¶ 4. Pell wrote again to Fancher on July 14, 2000, inquiring again as to his ideas on payment of the children's college tuition. *1139 Fancher responded by letter of July 19, 2000, that "I would much rather contribute to my kids than to an attorney." Fancher asked Pell to "write down (her) ideas of how this should be handled."
¶ 5. In a letter dated August 22, 2000, Pell, wrote that she had no problem splitting all college costs "50/50" after scholarships and grants. She wrote again on August 26, 2000, still having not received college tuition payments from Fancher. On September 15, 2000, Fancher responded with a note that he had received the letter and forwarded it to his attorney in Washington and would reply when he heard from his attorney. Fancher further responded in a letter of September 27, 2000, that his attorney had advised him that the subject of college tuition was "premature" since no "definite dollar amounts are known." He again requested "concrete figures with no open ended details left out."
¶ 6. Obviously annoyed, Pell replied in an October 23, 2000, letter that she wanted to split college costs "50/50" and that she did not know exact amounts until Phillip registered for classes the following fall, and Pell further pointed out that this agreement was after any scholarships the children would receive. In the letter she gave approximate costs of attending the University of Mississippi (Ole Miss) based on the 2000-2001 school year. She also gave the exact amount of Phillip's tuition and books at Holmes Community College under the dual enrollment program and asked that half of that amount be sent as soon as possible.
¶ 7. On November 15, 2000, Fancher mailed a note with a child support payment (tuition payments excluded) and said he had forwarded Pell's previous letter to his attorney and would get back with her as soon as he had heard from his attorney.
¶ 8. On April 10, 2001, Pell filed a Petition to Hold Edwin Keith Fancher in Contempt of Court in the Chancery Court of the First Judicial District of Hinds County. In addition to a request that Fancher be found in contempt, Pell sought an order from the court to require Fancher to contribute to the costs of Phillip's upcoming college expenses, a bond to guarantee and secure payment of Phillip's future college expenses, attorney's fees and court costs.
¶ 9. On June 4, 2001, Fancher answered and filed a counterclaim for modification of the divorce decree. The counterclaim basically requested the court to construe the divorce agreement in relation to the parties' ability to pay, their son's needs, and "resources that may be available to meet these educational needs."
¶ 10. By judgment dated August 22, 2001, the chancellor found that Phillip graduated from high school in the spring of 2001 and planned to attend the University of Southern Mississippi (USM) in the fall, and that Phillip had attended the dual enrollment program at Holmes Community College while in high school, as well as attending summer school at Holmes. The chancellor ordered Fancher to reimburse Pell for 70 percent of the Holmes dual enrollment expense, or $532.70, which represented tuition costs and book expenses for the dual enrollment program. The chancellor found Pell responsible for 30 percent of those expenses, or $228.30. He ordered Fancher to pay half of his portion on or before August 24, 2001, and the rest on or before September 23, 2001. The chancellor likewise divided the summer school expenses.
¶ 11. The chancellor ordered that Phillip be reimbursed by his parents for his expenses incurred in attending Holmes Community College summer school, which amounted to a total of $212. Fancher was to reimburse Phillip for 70 percent of this *1140 amount, or $148.40, and Pell was to reimburse Phillip for 30 percent, or $63.60.
¶ 12. After finding the estimated undergraduate expenses at USM to be $8,336.00, the Chancellor ordered Fancher to pay 70 percent of this amount, or $5,835.20, and Pell to pay 30 percent, or $2,500.80. The chancellor lowered by 70 percent the amount of child support Fancher paid to Pell while Phillip was in college because the chancellor found Fancher responsible for 100 percent of Phillip's personal, transportation, and clothing expenses for the ten months he attended college, for a total of $1850.00. Fancher usually paid $1,660.00 per month as child support for the three children. This figure, amounting to $553.00 per child, was to be reduced by 70 percent ($387.00) as to Phillip alone while he was enrolled in college. The chancellor found that the child support would remain the same, for the months of June and July.
¶ 13. The chancellor also directed Fancher to pay Pell a lump sum amount of $2,500 as partial reimbursement for her attorney's fees; however, the chancellor did not find Fancher in contempt.
¶ 14. Fancher filed a notice of appeal to this Court on September 21, 2000. On October 5, 2001, Pell filed a cross-appeal on the issue of the chancellor's refusal to find Fancher in contempt of court.

STANDARD OF REVIEW
¶ 15. The findings of fact of the chancery court, particularly in the areas of divorce and child support, will generally not be overturned by this Court on appeal unless they are manifestly wrong. Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989). Findings of the chancellor will not be disturbed or set aside on appeal unless the decision of the trial court is manifestly wrong and not supported by substantial credible evidence, or unless an erroneous legal standard was applied. Sarver v. Sarver, 687 So.2d 749, 753 (Miss.1997).

DISCUSSION

I. WHETHER THE CHANCELLOR CORRECTLY ORDERED FANCHER TO PAY PELL $2500 IN ATTORNEY'S FEES.
¶ 16. Fancher argues that the chancellor erred in ordering him to pay Pell's attorney's fees in a contempt proceeding because Fancher was found not to be in contempt. He further argues that Pell's "lack of candor and refusal to communicate" necessitated the proceedings.
¶ 17. Fancher cites Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990), for the proposition that a court's denial of an ex-spouse's petition for contempt prevents an award of attorney's fees to the spouse filing the petition. Cumberland is factually distinguishable from the case sub judice. In Cumberland, the ex-wife petitioning the court for contempt was found by the court to not only have the ability to pay her attorney's fees, but found much of the litigation expense incurred by the ex-wife to be unreasonable. Also, the ex-husband in Cumberland unilaterally reduced his child support payments because of his substantial reduction in income. This was not a case of a refusal to pay any of the educational expenses of a child. So, while it is true, as this Court wrote in Cumberland, that "failing a finding of contempt, (filing ex-spouse) argument for fees fails," Id., the circumstances leading to that decision were markedly different.
¶ 18. Regardless, we find Fancher was in contempt (see Issue III), and this issue is moot.

II. WHETHER THE TRIAL COURT CORRECTLY APPORTIONED THE AMOUNT OF COLLEGE *1141 EXPENSES TO BE PAID BY EACH PARTY.
¶ 19. Fancher argues that the 70/30 college expense split is unfair because he is already paying 35 percent of his net pay in child support, and this figure is higher than the statutorily mandated 22 percent of the child support guidelines of Miss.Code Ann. § 43-19-101 (2000).
¶ 20. This Court has said that an award of child support is a matter within the discretion of the chancellor and that determination will not be reversed unless the chancellor was manifestly wrong in his finding of fact or manifestly abused his discretion. Gillespie v. Gillespie, 594 So.2d 620, 622 (Miss.1992). Furthermore, "[t]he process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." Id.
¶ 21. Pell cites Clark v. Clark, 754 So.2d 450 (Miss.1999), which cites Clausel v. Clausel, 714 So.2d 265, 267 (Miss.1998), as precedent explaining that the statutory guidelines are not intended to "per se" control how much child support a party pays. In Clausel, we found the chancellor manifestly in error for upholding an award of $750 in child support for two children, which was nearly $530 above the statutory guidelines. We found the chancellor in Clausel made no evidentiary finding of the husband's financial ability. We did hold, however, "the guidelines do not control per se the amount of an award of child support." (citing Draper v. Draper, 658 So.2d 866, 869 (Miss.1995)). The award in Clausel accounted for nearly half of the father's monthly income and we reversed, finding the chancellor manifestly in error.
¶ 22. In Clausel, we gave several guidelines for courts to consider when making or modifying an award of child support. To overcome the rebuttable presumption that the statutory guidelines are appropriate, thereby making application of the guidelines unjust in a particular case, this Court looks to these factors:
(a) Extraordinary medical, psychological, educational or dental expenses.
(b) Independent income of the child.
(c) The payment of both child support and spousal support to the obligee.
(d) Seasonal variations in one or both parents' incomes or expenses.
(e) The age of the child, taking into account the greater needs of older children.
(f) Special needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines.
(g) The particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children thereby reducing the financial expenditures incurred by the custodial parent, or the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent's homemaking services.
(h) Total available assets of the obligee, obligor and the child.
(i) Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.
Clausel, 714 So.2d at 266 (emphasis added).
¶ 23. Additionally, this Court has held that although "college expenses are not technically `child support', a parent may be ordered by the court to pay them. A parent may also be ordered to pay some portion of the resulting expenses of college, *1142 in addition just to tuition." Lawrence v. Lawrence, 574 So.2d 1376, 1382 (Miss.1991). Moreover, "payments such as college tuition will seldom qualify [as offset for child support], as they do not diminish the child's need for food, clothing and shelter." Varner v. Varner, 588 So.2d 428, 435 (Miss.1991).
¶ 24. The divorce decree stated "that all three children will be provided with a college education at the appropriate time according to the ability and desires of the child and in keeping with the means and ability of Husband and Wife." This is in addition to the child support provisions of the agreement, which were $1350 per month at the time of the divorce.
¶ 25. Pell offered into evidence numerous letters wherein she offered to pay half of the college expenses. Fancher testified at the hearing that he did not think the 50/50 split was fair and he wished to pay less than that. The chancellor ordered Fancher to pay 70 percent of Phillip's USM education, including tuition, books, meals, and housing. Also, Fancher was ordered to reimburse Phillip for 70 percent of the summer school classes and to reimburse Pell for 70 percent of the dual enrollment classes. Fancher's per-child support of $553.00 was ordered reduced by 70 percent as to Phillip for the time he was in college. The chancellor found Fancher's adjusted gross income was $72,975.00, while Pell's was $30,660.00. With the 70 percent reduction in Phillip's child support during college, Fancher would pay a monthly child support payment of $1273.00. The chancellor also ordered Fancher to pay the full personal expenses of Phillip, amounting to ten monthly installments of $185 for the months Phillip was in college. He was to pay this amount directly to Phillip. Finally, the chancellor ordered Fancher to pay $2500.00, representing a lump sum attorney's fee payment for Pell's attorney's fees to bring the action. The chancellor believed the attorney's fee award was justified because "we could have gotten this all worked out without doing this (the hearing)."
¶ 26. Pursuant to the chancellor's ruling, Fancher was required to pay $5,835.20, or 70 percent of one year's tuition and expenses at USM. Additionally, Fancher was required to pay $165.90 per month in child support for Phillip during the college months, reduced by 70 percent of the usual per-child rate. Fancher was also directed to pay Phillip $185 per month for various college expenses during the months Phillip is in college. Thus, Fancher would have to pay a total of $9,344.20 for the ten months Phillip would be attending in college. As the chancellor found, Fancher's adjusted gross income is $72,975.00, thereby meaning that the college costs are 12.8 percent of Fancher's adjusted gross income. When one adds in the per-child cost of child support ($553 × 2 children)=$1,106 per month times 12 months=$13,272.00, along with Phillip's college expense and support, or $9,344.00, the total amount is $22,616.00, or roughly 30 percent of Fancher's adjusted gross income. This figure is 8 percent higher than the statutory mandate, and we have said that "payment such as college tuition will seldom qualify" to diminish child support payments. Varner, 588 So.2d at 435.
¶ 27. This 8 percent award over the statutory guidelines is appropriate when considering the facts and circumstances peculiar to this particular case. It certainly is more appropriate than a fifty/fifty split of the college expenses, as Fancher simply makes more and can afford to spend more than Pell, who had an adjusted gross income of $30,660.00, as found by the chancellor.
¶ 28. When the guidelines we handed down in Clausel are considered, namely *1143 guidelines (e) and (h) found in Miss.Code Ann. § 43-19-103, which provide, respectively, for greater expenses for older children, and consideration of the assets of each parent, we find no manifest error in the chancellor's findings. Also, as we held in Varner, the child support payments can not be used to offset the responsibility for the costs of education.

III. WHETHER THE TRIAL COURT ERRED IN NOT HOLDING FANCHER IN CONTEMPT OF COURT.
¶ 29. Pell argues that Fancher should have been held in contempt because he did not follow the court's order in the divorce settlement to provide for his portion of education expenses once they became due.
¶ 30. In a contempt action involving unpaid child support, when the party entitled to receive support introduces evidence that the party required to pay the support has failed so to do, a prima facie case of contempt has been made. Guthrie v. Guthrie, 537 So.2d 886, 888 (Miss.1989). At this point, the burden shifts to the paying party to show an inability to pay or other defense, and this proof must be clear and convincing and rise above a state of doubtfulness. Shelton v. Shelton, 653 So.2d 283, 286-87 (Miss.1995); Duncan v. Duncan, 417 So.2d 908, 909 (Miss.1982); Lewis v. Lewis, 213 Miss. 434, 57 So.2d 163 (1952). Whether a party is in contempt is left to the chancellor's substantial discretion. Shelton, 653 So.2d at 286.
¶ 31. Pell cites Lahmann v. Hallmon, 722 So.2d 614, 619 (Miss.1998) for the proposition that "the purpose of civil contempt is to enforce or coerce obedience to the orders of the court." She stopped short. Lahmann also includes the language of the previous paragraph. In Guthrie, we affirmed the chancellor's findings that the ex-husband's non-payment of child support was not "willful contempt." Guthrie, 537 So.2d at 888. However, the facts in Guthrie are not analogous to the case sub judice as the husband was being sued 18 years after his alleged lapse of child support payments. Lahmann also uses the words "willful contempt." In Lahmann, we found the ex-husband in contempt for not paying his child support, even after it had been reduced to a nominal amount. Lahmann, 722 So.2d at 620.
¶ 32. Without doubt, a prima facie case has been made out as to contempt of court. It is critical to again note the admission of the chancellor when ordering Fancher to pay the $2500 for Pell's attorney's fees: "I think that we could have gotten this all worked out without doing this." "This" refers to the court proceedings. Even in the eyes of the chancellor the entire procedure was unnecessary.
¶ 33. Moreover, when Pell made the prima facie case, the burden shifted to Fancher to show his inability to pay, what was then, 50 percent of Phillip's education costs. Fancher appears from the record to simply be avoiding any payment and prejudiced Pell as a result, forcing her into litigation for something that was settled in the divorce decree. Certainly, Fancher's proper route would have been to at least make a good faith effort to pay something, rather than simply referring the matter to his attorney. Phillip is, after all, his child. He made the agreement to pay the college expenses and to do nothing without being forced by court decree is in violation of the parties' agreement which was incorporated into the chancellor's divorce decree. We conclude in stating that the record reveals that while Fancher avoided his educational expense responsibilities to Phillip and Pell, he had rather significant restaurant and liquor store bills.

*1144 CONCLUSION

¶ 34. The chancellor's decision is affirmed in all respects, except as to the contempt issue, which is reversed and remanded for proceedings not inconsistent with this opinion.
¶ 35. ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REVERSED AND REMANDED.
PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB AND DIAZ, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY EASLEY, J. WALLER, J., NOT PARTICIPATING.
GRAVES, J., concurring in part and dissenting in part:
¶ 36. The chancellor's decision is affirmed by the majority in all respects, except as to the contempt issue. Contempt matters are committed to the substantial discretion of the trial court. Dennis v. Dennis, 824 So.2d 604 (Miss.2002). Additionally, the chancery court should be affirmed unless manifest error is present and apparent. Premeaux v. Smith, 569 So.2d 681 (Miss.1990). On the contempt issue, as well as all other issues, I would affirm the chancellor's decision.
EASLEY, J., JOINS THIS OPINION IN PART.