# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00943-COA

MAGGIE ATWOOD CALDWELL                                          APPELLANT

v.

THOMAS ATWOOD                                                   APPELLEE

DATE OF JUDGMENT:              05/28/2014
TRIAL JUDGE:                  HON. ROBERT L. LANCASTER
COURT FROM WHICH APPEALED:    ITAWAMBA COUNTY CHANCERY
                              COURT
ATTORNEYS FOR APPELLANT:      R. SHANE MCLAUGHLIN
                              NICOLE H. MCLAUGHLIN
ATTORNEY FOR APPELLEE:        THOMAS ATWOOD (PRO SE)
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:      GRANTED APPELLEE'S REQUEST FOR
                              MODIFICATION OF CHILD VISITATION
                              AND DENIED APPELLANT'S REQUEST
                              FOR CONTEMPT AND ATTORNEY'S FEES
DISPOSITION:                  AFFIRMED IN PART; REVERSED AND
                              REMANDED IN PART; REVERSED AND
                              RENDERED IN PART - 11/03/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND CARLTON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In January 2012, seven years after Maggie Atwood Caldwell and Thomas Atwood's divorce, they filed a joint petition to modify their child-custody and child-support agreement pertaining to their daughter, Gracie. The Itawamba County Chancery Court granted the request. In 2013, Atwood filed a complaint against Caldwell for contempt regarding visitation privileges and also sought a reduction in his child-support obligations. Caldwell

filed a counter-complaint asserting that Atwood was in contempt for failure to pay outstanding child support. She also sought attorney's fees. A special chancellor was assigned to the case, and a hearing took place. The chancellor granted Atwood more visitation and lowered his child-support payments. The chancellor further denied Caldwell's assertions that Atwood owed her unpaid child support and attorney's fees. Aggrieved, Caldwell appeals. We affirm the chancery court's judgment with respect to enhanced visitation. We reverse and remand the judgment with respect to unpaid child support owed to Caldwell and reverse and render the judgment regarding attorney's fees.

## STATEMENT OF FACTS

¶2. Caldwell and Atwood divorced in 2005. In the divorce decree, Caldwell was granted physical custody of Gracie with Atwood receiving substantial visitation, and both parties shared legal custody of Gracie. Atwood was required to pay $350 per month, or in the alternative, fourteen percent of his gross income, whichever is greater, in child support to Caldwell. Atwood was also required to maintain health insurance for Gracie and pay half of any medical bills not covered by insurance. Furthermore, Atwood was ordered to pay half of all education expenses, "including, but not limited to, school pictures, room fees, extracurricular activity fees, graduation fees, class rings, books, school supplies, lab fees, tuition," and other similar expenses until Gracie reached the age of twenty-five.

¶3. In January 2012, Caldwell and Atwood filed a joint request, which was granted by the chancery court, to modify Atwood's child-custody rights and his child-support obligations due to a pending felony drug charge against him. With regard to custody, sole physical and

2

legal custody was given to Caldwell. However, if Atwood were to receive a minimum sentence for the pending charges, which he eventually did, then temporary supervised visitation would be permitted. Nonetheless, during the temporary period, Atwood was required to "establish regular routine attendance of [Narcotics Anonymous (NA)] meetings, establish [an] independent place of residence in a safe and controlled environment (to include a bedroom for Gracie to be shared by not more than one other person), pass[] drug testing for 90 days, [and] maintain[] full[-]time employment for at least 90 days." If Atwood met these requirements, then he would be entitled to unsupervised visitation on weekends and holidays as outlined in the order.

¶4.    Atwood's child-support obligations were also amended. Atwood was still required to maintain health and dental insurance on Gracie and pay half of all expenses not covered by the insurance. He was also ordered to continue paying half of all school expenses and extracurricular activities. The order mandated that Caldwell present Atwood with copies of receipts for any expenses incurred. However, the order stated the following with respect to monthly child support:

> **Child Support.** That back child support owed by Thomas Atwood in the amount of $500.00 will be paid upon his receiving the IRS refund for 2011. Monthly child support in the amount of $250.00 is to be paid by Thomas Atwood on the first of the month and each month thereafter for one year. After that first year, the support will increase to $350.00 per month thereafter to be paid on the first of the month by Thomas Atwood. In addition to the monthly child support, the father will be responsible for one half of the summer daycare expense and after[-]school[-]care expense which he agrees to pay to Maggie Caldwell on the first of each month.

¶5.    In May 2013, Atwood filed a motion for contempt and modification. He alleged that

3

Caldwell unreasonably denied him sufficient visitation with Gracie and requested more visitation privileges. He also asked that his monthly child-support payments be reduced. Caldwell filed a counter-complaint claiming Atwood was in contempt for his arrearage on monthly child-support payments and other payments relating to Gracie, including school, extracurricular activities, and medical bills. Caldwell also asserted that Atwood was in contempt for failure to adhere to the chancery court's requirements that he maintain full-time employment and regularly attend NA meetings. Finally, Caldwell requested that Atwood pay her attorney's fees associated with the contempt proceedings.

¶6.    The sitting chancellor recused, and a special chancellor was assigned to the case. At a hearing on the matter in May 2014, Atwood testified that he had recognized he was in arrears on child support even before he and Caldwell filed their joint request to modify the child-support agreement. However, he noted that it was his understanding that the order he and Caldwell entered into in 2012 would forgive any unpaid child support if Atwood paid the $500. He also admitted that he had not followed the chancery court's order with respect to child-support payments since the order was entered. Atwood stated that he had failed to make the payments and requested to lower his child-support obligations because he did not have a full-time job. At the time of the hearing, Atwood was only working fifteen hours a week at a retail store, making $7.25 an hour. While Atwood testified that he had applied previously at a few locations for full-time jobs, he noted that he was not actively searching for full-time employment. Atwood further admitted that although he had attended NA for approximately six months, he had not attended an NA meeting in two years.

4

¶7.    With respect to visitation, Atwood stated that he had visited with Gracie often in the two weeks leading up to the hearing.  However, he admitted that in the year before the hearing, he had only seen Gracie three times – for two hours on Thanksgiving Day, two hours on Christmas Day, and a few minutes on her birthday.  He also admitted that he had not attempted to set up any other visitation with Gracie.

¶8.    Caldwell also testified at the hearing.  Regarding monthly payments, Caldwell admitted that Atwood paid $250 each month for a year after the entry of the order, as required.  However, although Atwood followed the order's terms and made increased payments of $350 a month for a few months, he eventually stopped making payments altogether.  Reference was made to garnishments imposed by the Department of Human Services (DHS), but it was unclear in what amount.

¶9.    When asked about Atwood's contributions, or lack thereof, to expenses relating to Gracie, Caldwell repeatedly referenced a spreadsheet she had created and maintained for several years that showed expenses incurred for Gracie and payments made by Atwood.  Though inadmissible as evidence, Caldwell's calculations reflected arrears in excess of $10,000. She also asserted at the hearing that it was her understanding that the $500 payment listed in the order served as a credit toward Atwood's arrearage, not payment in full or forgiveness of the remaining debt.  According to Caldwell, Atwood owed $5,010 for 2010 expenses; $3,900 for 2011 expenses; $1,125 for 2012 expenses; $1,197 for 2013 expenses; and $1,715 for 2014 expenses through the time of the hearing.  However, Caldwell admitted that she did not maintain a receipt book to substantiate all of those expenses.  Nonetheless,

5

she stated that she could obtain past receipts for many of the expenses, such as daycare. At present, Caldwell asserts that Atwood owes $12,948 in unpaid child support.

¶10. After the hearing, the chancellor entered an order granting Atwood supervised visitation for four consecutive Saturdays from 8 a.m. until 5 p.m., and thereafter invoked the heightened visitation privileges previously ordered in the original divorce decree. Furthermore, the chancellor determined that Atwood had met all conditions required of him in the prior order "with the possible exception of full[-]time employment for 90 days which by the undisputed testimony of [Atwood] has been impossible for him to perform."

¶11. The chancellor also reduced Atwood's child-support payments to fourteen percent of his monthly gross income. The chancellor noted that, by law, outstanding child support cannot be forgiven. The chancellor went on to state that "[t]he proof presented by [Caldwell] . . . does establish that there is [sic] some arrears in child-support payment due under the [c]ourt's previous judgments." Nonetheless, the chancellor went on to say:

> However, the proof is insufficient to establish the exact amount, due in part to the failure of [Caldwell] to keep adequate records and/or to document expenses that are in addition to the monthly child support of $350.00. [Caldwell's] proof failed to differentiate between the two separate obligations or give sufficient accounting as to which payments were missed and which payments were credited to arrears or present obligations. [Caldwell's] counterclaim for relief is therefore denied also.

Furthermore, with regard to Atwood's payment of the arrears, the chancellor held that "[Atwood's] prior defaults . . . shall be purged by his successfully having paid fourteen percent of his monthly adjusted gross income . . . for twelve consecutive months hereafter." The chancellor concluded with a footnote stating that Caldwell's "failure to document the

6

arrears preclude[d] entry of a judgment for the arrears." The chancellor also denied Caldwell's request for attorney's fees.

¶12. On appeal, Caldwell asserts the chancellor erred in the following ways: (1) reducing Atwood's monthly child-support obligations and forgiving his arrearage, thereby denying Caldwell a judgment for the arrearage; (2) increasing Atwood's visitation privileges; and (3) failing to grant Caldwell attorney's fees for litigation associated with her counter-complaint. It is noteworthy that Atwood failed to file an appellee's brief or response of any type in this appeal.

**STANDARD OF REVIEW**

¶13. The Mississippi Supreme Court has held that a chancellor's findings of fact, especially in domestic-relations cases such as the instant case, "will generally not be overturned by this Court on appeal unless they are manifestly wrong." *Fancher v. Pell*, 831 So. 2d 1137, 1140 (¶15) (Miss. 2002) (citation omitted). If a chancellor's decisions are manifestly wrong, unsupported by substantial credible evidence, or based upon the application of an erroneous legal standard, the chancellor's findings may be set aside on appeal. *Id.* (citation omitted).

¶14. Additionally, we note that Atwood's failure to file a brief does not automatically require that we reverse the chancery court's judgment. *See Roberts v. Roberts*, 110 So. 3d 820, 825 (¶10) (Miss. 2013) (citations omitted). "When matters on appeal touch the welfare of a minor child, then regardless of whether a party filed a brief, this Court will reach the merits of the issues in this appeal, though we proceed unaided by a brief from the appellee."

7

*Id*. (citation omitted).  Furthermore:

> If the record is large or complicated and [the appellant] thoroughly briefed the issues, provided applicable citations of authority, and presented an apparent case of error, then we should consider [the appellee's] failure to file a brief as his confession of error and reverse the chancellor's judgment.  But if the record can be conveniently examined, and the record reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, then we should disregard the fact that [the appellee] failed to file a brief.

*Id*. at (¶11) (internal citations and quotations omitted).

**DISCUSSION**

**I.        Visitation**

¶15.    Caldwell argues that the chancellor erred by increasing Atwood's visitation privileges when Atwood failed to meet the requirements of the 2012 order providing reduced visitation privileges.  It is well settled that a "chancellor has broad discretion when determining appropriate visitation and the limitations thereon." *Harrington v. Harrington*, 648 So. 2d 543, 545 (Miss. 1994) (citations omitted).  "When the chancellor determines visitation, he must keep the best interest of the child as his paramount concern while always being attentive to the rights of the non-custodial parent, recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and his child." *Id*.  "To obtain a change to the visitation schedule, the moving party need only show that the current visitation schedule is not working and that it would be in the best interest of the child to change the visitation schedule." *Jones v. McQuage*, 932 So. 2d 846, 848 (¶9) (Miss. Ct. App. 2006).

¶16.    Here, Atwood asserts that his visitation was improperly interfered with by Caldwell and seeks enhanced visitation privileges.  In his order, the chancellor determined the

8

following: "The present visitation schedule is not working. The best interest of the child is not served by that schedule and the [c]ourt must act to set a visitation schedule that works in the best interest of the child."

¶17. The record reflects that Atwood testified that he had only seen his child three times in the year leading up to the hearing with the exception of two weeks prior to the hearing and had not attempted to schedule additional visitation with Gracie outside of holidays and her birthday. However, the primary goal of a visitation schedule is "to maintain a healthy, loving relationship between the non-custodial parent and his child." *Harrington*, 648 So. 2d at 545. Hence, based on the record before us, increasing, as opposed to restricting, Atwood's visitation rights can only aid in fostering a better relationship between Atwood and Gracie. As such, we cannot conclude that the chancellor abused his discretion in affording Atwood more visitation with Gracie. Accordingly, we affirm the chancellor's judgment with respect to Atwood's visitation schedule.

## II.    Child-Support Arrearage

¶18. Caldwell asserts that the chancellor's order erroneously forgave Atwood's unpaid child support while simultaneously reducing the amount he would pay to Caldwell monthly. Indeed, the order acknowledges that Atwood is in arrears on child support but then states that "his prior defaults. . . shall be purged by his successfully having paid fourteen percent of his monthly adjusted gross income . . . for twelve consecutive months hereafter." Furthermore, the chancellor failed to list any monetary figures reflecting Atwood's total arrearage. Instead, the chancellor merely stated that Caldwell's "failure to document the arrears

9

precludes entry of a judgment for the arrears." We disagree.

¶19. It is well settled that "court-ordered child-support payments vest in the child as they accrue and may not thereafter be modified or forgiven, only paid." *Id*. at (¶14) (quoting *Varner v. Varner*, 588 So. 2d 428, 434 (Miss. 1991)). "Such benefits belong to the child, and the custodial parent has a fiduciary duty to hold them for the use of the child." *Id.* at (¶13) (quoting *Smith v. Smith*, 20 So. 3d 670, 674 (¶13) (Miss. 2009)).

¶20. While the law allows for credit to be made for child-support payments through additional physical support by the noncustodial parent, it does not permit those payments to simply be "purged," whether by an agreement or order. It is clear that Atwood is in arrears. He admitted at the hearing that he was in arrears prior to the 2012 agreed order modifying his child-support obligations. Although his interpretation of the order was that a $500 payment would essentially wipe the slate clean of his debt, this is not permissible by law. The $500 could be credited toward his arrearage, but the remaining debt still stands. It is also evident that Atwood continued accruing arrears after the 2012 order. However, we are unable to determine in what amount.

¶21. The record is insufficient for this Court to determine the amount of arrears to be assessed against Atwood. Throughout the hearing, there was repeated mention of receipts – receipts that were absent as well as those that Caldwell either had in her possession or could obtain – as well as DHS records and garnishments. We fail to see any such documentation present in the record and are, therefore, not in a position to determine the arrearage. In this case, it was the duty of the chancellor to ensure that proper evidence was

10

present and reviewed in order to determine the amount of arrears owed. Such evidence may include bank statements, invoices, and other financial documentation. If the evidence was not before the chancellor, the chancellor was under an obligation to request the information in order to properly determine the amount of child support due. Again, the benefits in question belong to Gracie, and it is the responsibility not only of the petitioning parent but also the reviewing court to ensure that the proper funds are awarded to the child to whom they have accrued.

¶22. With regard to the chancellor's reduction of Atwood's child-support obligations, the chancellor determined that Atwood had properly shown the impossibility of making the payments. Again, we disagree. Atwood was required to maintain full-time employment pursuant to the 2012 order. Atwood testified that he had been employed full-time at Foot Locker previously, but was fired for a technicality. Atwood stated that he had applied for full-time jobs at approximately three companies, but he surmised that his discharge from Foot Locker combined with his criminal record precluded him from getting hired.

¶23. First, Atwood's testimony does not reflect an exhaustive search on his part for full-time work. Second, we fail to see how the rejection of three employment applications equates to an impossibility of procuring full-time employment. The requirement of full-time employment should not be eliminated under the current circumstances. By obtaining full-time employment, Atwood will be in a better position to contribute both to his monthly child-support payments and his arrearage.

¶24. Accordingly, we reverse and remand the issue of child support – both current and

11

outstanding – to the chancery court for a determination of the exact and proper amount that is owed to Caldwell. We further order the chancery court to create a payment plan by which Atwood may begin contributing to payment of the arrearage.

### III. Attorney's Fees

¶25. Finally, Caldwell argues that the chancellor improperly denied her request for attorney's fees for litigation associated with her counter-complaint alleging contempt. Caldwell's counter-complaint alleged that Atwood was in contempt of the 2012 order due to his failure to pay child support and failure to meet the requirements for visitation. Having found that Atwood had, in fact, failed to meet the 2012 order's terms, it is proper for Caldwell to be awarded attorney's fees associated with her counter-complaint since Atwood was, for all intents and purposes, in contempt.

¶26. "When a party is held in contempt for violating a valid judgment of the court, attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Roberts*, 110 So. 3d at 828 (¶23) (citation omitted). The award may be assessed "against the offending party without regard to the recipient's inability to pay." *Id*. (citation omitted).

¶27. Here, though it would appear that Atwood may experience difficulty in paying these expenses, they are, nonetheless, warranted. At the hearing, Caldwell's attorney specifically asked her questions regarding the attorney's fees accumulated to date on the contempt proceedings. The following dialogue ensued:

> Counsel: . . . And, to date, based on . . . the amount which we're requesting to be reimbursed, how much have you incurred in

12

attorney['] fees only with the contempt?

Caldwell:     $2,050.45.

Counsel:      Okay.  And, again, there has been an action filed against you, which has been defended, but none of those actions are set out on [the itemized invoice for attorney's fees]; is that correct?

Caldwell:     That's correct.

Counsel:      Are you asking your ex-husband to be responsible for reimbursement of, approximately, $2,100?

Caldwell:     Yes.

Attorney:     Okay.  And have I performed those services at $200 an hour?

Caldwell:     Yes, sir.

Attorney:     And when I met with you and worked on things with you, was I precluded from working on other things?  We simply worked on yours when we worked on it?

Caldwell:     That's right.

Attorney:     Okay.  And do you feel like that's fair and reasonable, and it accurately reflects the time that I have spent preparing on this contempt action?

Caldwell:     Yes, sir.

Attorney:     And, again, to be clear, there are other actions that we have taken that you have received a bill for, but we're not asking for reimbursement for those matters [,] correct?

Caldwell:     That's correct.

¶28.   The evidence is clear that Caldwell incurred attorney's fees in the amount of $2,050.45 litigating her contempt action.  As such, we reverse the chancellor's determination that Caldwell was not entitled to attorney's fees and render a judgment to her in the amount

13

of $2,050.45.

¶29.   **THE JUDGMENT OF THE ITAWAMBA COUNTY CHANCERY COURT IS AFFIRMED IN PART; REVERSED AND REMANDED IN PART; AND REVERSED AND RENDERED IN PART.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**